# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| *In re*: SANCOM, INC., a South Dakota corporation,  Plaintiff, Counterclaim Defendant,  vs.  QWEST COMMUNICATIONS CORPORATION, a Delaware corporation,  Defendant, Counterclaimant,  vs.  FREE CONFERENCING CORPORATION,  Counterclaim Defendant.  Pending in the United States District Court, District of South Dakota, Southern Division, CIV. 07-4147-KES | No. 08mc75  **ORDER ON MOTIONS TO COMPEL** |

_____

This order concerns subpoenas issued by Qwest Communications Corporation ("Qwest") in connection with a lawsuit pending in the United States District Court for the District of South Dakota. The subpoenas were issued in this district, and on or about August 27, 2008, they were served on Great Lakes Communication Corporation ("Great Lakes"), and Farmers Telephone Company of Riceville Iowa and OmniTel Communications, Inc. (collectively referred to herein as "Riceville"). The subpoenas directed Great Lakes and Riceville to produce documents that already had been produced to Qwest in an administrative proceeding before the Iowa Department of Commerce Utilities Board ("IUB"). Although Qwest already has copies of these documents, it obtained the copies under Protective Agreements entered in the IUB proceeding. *See* Doc. No. 1-2, Ex. 8; Doc. No. 17, Ex. 13. The Protective Agreements would prohibit the use of these documents in the South Dakota lawsuit absent a court order. The subpoenas also

sought production of deposition transcripts and exhibits from the IUB proceeding. Again, Qwest already has possession of these documents, but only in the context of the IUB proceeding. The subpoenas also sought production of correspondence between the subpoenaed party and Sancom, Inc. (the plaintiff in the South Dakota action), and between the subpoenaed party and Vantage Point Solutions.

Great Lakes and Riceville refused to comply with the subpoenas, and Qwest filed motions in this court asking the court to compel production of the documents. Doc. Nos. 1, 17. Great Lakes and Riceville have resisted the motions, arguing production of the documents would violate the terms of the Protective Agreements. They also argue many of the requested documents are irrelevant to the South Dakota action and therefore should not be ordered produced. Great Lakes separately argues that an order compelling production of the requested documents would violate its "due process discovery rights under the federal rules." Doc. No. 9, p. 8. Also, Great Lakes asserts that it has no documents responsive to the request for correspondence with Sancom, Inc. or Vantage Point Solutions, so it would not be able to comply with this request. *Id*. at pp. 11-12. Riceville argues the request for documents relating to Vantage Point Solutions is overly broad.

The court held a telephonic hearing on the motions on December 22, 2008. Qwest was represented by Charles W. Steese. Great Lakes was represented by Ira T. Kasdan. Riceville was represented by Robert F. Holz, Jr. and Steven L. Nelson. Sancom was represented by Ross A. Buntrock and Joseph Bowser.

Notably, neither Great Lakes nor Riceville has argued undue burden or hardship in connection with the requested production of IUB documents and deposition materials. This is because Qwest already has copies of the documents and materials. If the court were to grant Qwest's motion to compel production of the IUB documents, the parties could simply agree that Qwest could use in the South Dakota lawsuit the copies of the documents already in its possession.

The first argument advanced by Great Lakes and Riceville is that the IUB documents are not relevant to Qwest's claims or defenses in the South Dakota action. This argument is not persuasive. While it is likely that some of these documents will end up not being offered as evidence in the South Dakota case, the court finds Qwest is seeking these documents as part of a good faith search for evidence relevant to its claims and defenses in the South Dakota case. It would be a waste of the resources of the court and the parties to require a document-by-document determination of relevance. This is especially true here, where the documents already have been identified and produced to Qwest, and will be subject to a protective order entered in the South Dakota case. *See* Doc. No. 1-2, Ex. 18.

Great Lakes and Riceville also argue the IUB documents cannot be used in the South Dakota case because of the Protective Agreements filed in the IUB proceeding. These agreements provide that documents containing "proprietary or confidential information" produced in connection with the IUB proceedings may be protected from disclosure. Protective Agreement ¶ 1. Confidential documents produced pursuant to the protective agreements may not be disclosed by the receiving party to any person. *Id*. ¶ 2. If a court subpoenas or orders production of a such a document, the receiving party must promptly notify the disclosing party of the pendency of the subpoena or order so that the disclosing party has a full opportunity to oppose the production. *Id*. ¶ 8.

Paragraph 10 of the Protective Agreements provides as follows:

> 10. *Violations of Protective Agreement*. Persons obtaining access to Stamped Confidential Documents or Confidential Information under this Protective Agreement shall use the information solely for the preparation and conduct of this proceeding and any subsequent judicial proceeding directly related to this proceeding and, except as provided herein, shall not use such information for any other purpose, including business, governmental, commercial, or other administrative, regulatory or judicial proceedings. Should any person that has obtained access to Stamped Confidential Documents or Confidential Information under this Protective Agreement

3

> violate any of its terms, the party shall immediately convey that fact to the disclosing party. Further, should such violation consist of improper disclosure of a Stamped Confidential Document or Confidential Information, the violating party shall take all reasonable steps to remedy the improper disclosure. The Board has full authority to fashion appropriate sanctions for violations of this Protective Agreement.

Great Lakes and Riceville argue Qwest's subpoenas constitute an improper attempt to circumvent the Protective Agreements. They argue that for Qwest to use the documents in the South Dakota case, it first must petition the IUB for permission.

It appears the purpose of the Protective Agreements is to make certain that a party does not use proprietary or confidential information produced in the IUB proceedings before the producing party has had an opportunity to object to the use. Procedures are established in the agreements for adjudication of disputes concerning the use and disclosure of the documents. However, paragraph 8 of the agreements contemplates that in some circumstances, other courts will rule on matters relating to the confidentiality of the documents.

Nothing in the language of the Protective Agreements suggests that documents produced pursuant to the terms of the agreements are somehow insulated from the operation of a proper subpoena or order of production entered in an unrelated federal lawsuit. The case authorities cited by Great Lakes and Riceville do not persuade the court otherwise.

In *United States v. GAF Corp.*, 596 F.2d 10 (2d Cir. 1979), the respondent, GAF, obtained a number of documents from a competitor, Kodak, during discovery proceedings in a private antitrust action. GAF asked the court to modify the protective order so that it could provide the documents to the government for use in an antitrust investigation of Kodak. The court denied the request. The government then issued process to GAF seeking production of the documents. Kodak objected to the production. The Second

Circuit Court of Appeals held that for the government to obtain the documents, it first must make application to the judge who entered the protective order. *Id*. at 16.

The holding in *GAF* does not help Great Lakes or Riceville. The present case does not involve a third party coming to this court requesting that Qwest be ordered to produce documents produced to it by Great Lakes or Riceville pursuant to a protective order. Instead, Qwest is attempting to obtain documents directly from Great Lakes and Riceville. Any claim that these documents are somehow insulated from legitimate discovery in a case pending in federal court because they previously were produced in state administrative proceedings pursuant to a protective order is not persuasive. Nothing in the *GAF* case suggests that the government would have been prohibited from seeking production of documents from Kodak because of the fact that Kodak previously had produced the documents to GAF pursuant to a protective order.

In *Wilk v. American Medical Association*, 635 F.2d 1295 (7th Cir. 1980), cited by Great Lakes, five chiropractors sued the American Medical Association, and others, claiming a nationwide conspiracy to eliminate the profession of chiropractic medicine. The plaintiffs obtained a large number of documents from the defendants that were marked "confidential" pursuant to a protective order entered in the case. The State of New York intervened to seek a modification of the protective order so that it could obtain access to the confidential documents produced to the plaintiffs. The district court denied the motion to modify the protective order, holding that it could not modify the order based on a motion by an intervenor. New York appealed. The Seventh Circuit Court of Appeals issued a writ of mandamus directing the district court to modify the protective order to permit access to the materials by New York. Great Lakes relies on dictum in a footnote where the *Wilk* court indicated a "request for modification of a protective order must be made to the court which issued the protective order." *Id.*, 635 F.2d at 1299 n.8.

In the present case, Qwest is not requesting a modification of the Protective Agreements. Instead, in a separate case, Qwest is seeking production of the documents from the source, not from a party who received the documents pursuant to a protective

order. *Cf. Jochims. v. Isuzu Motors, Ltd.*, 148 F.R.D. 624, 631 (S.D. Iowa 1993). Nothing in *Wilk* suggests that this request is improper.

Great Lakes separately contends that an order compelling production of the requested documents would violate its "due process discovery rights under the federal rules." This contention is not supported by argument or authority, and is rejected. Great Lakes has had full access to the processes of this court in connection with the requested document production.

The court concludes that Great Lakes and Riceville should produce the subpoenaed documents. The court further finds production of the deposition transcripts and exhibits relating to the IUB proceedings would serve the interests of efficiency and judicial economy. Although Qwest could re-depose the same individuals on the same topics, such an exercise would not serve any legitimate purpose, only increasing the parties' costs and delaying the South Dakota action. The motions to compel these documents are **granted**. As an alternative to Great Lakes and Riceville producing the documents, deposition transcripts, and exhibits, the parties may, if desired, enter into an agreement to allow Qwest to use the documents, deposition transcripts and exhibits already in Qwest's possession.

Quest also has subpoenaed correspondence between the subpoenaed parties and Sancom, Inc. (the plaintiff in the South Dakota action), and between the subpoenaed parties and Vantage Point Solutions. Great Lakes represents to the court that it has no such documents. Based on this representation, the motion to compel Great Lakes to produce these documents is **denied**.

Riceville admits to having such documents, but argues the subpoena is too broad. Riceville submitted to the court an affidavit from Ronald Laudner, the General Manager of Farmers Telephone Company of Riceville, stating that Riceville has used Vantage Point Solutions for approximately six years on numerous engineering matters, many having no relationship to Sancom. Qwest responds that even when Vantage Point Solutions was assisting Riceville on other matters, it nevertheless may have helped Sancom. Discovery

rules "are to be accorded a broad and liberal treatment," to allow the parties to obtain sufficient information to litigate their claims, eliminate surprise, and promote settlement. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947); *accord Credit Lyonnais, S.A. v. SGC Intern., Inc.*, 160 F.3d 428, 430 (8th Cir. 1998). Riceville has made a showing of some burden with regard to producing the Vantage Point Solutions documents, but the court finds the burden is not undue. Further, as with the IUB documents, the court finds Qwest is seeking these documents in good faith to develop evidence relevant to its claims and defenses in the South Dakota action. The motion to compel these documents is **granted**.

Qwest and Great Lakes both have asked for relief relating to the lack of consultation before the filing of the motion to compel, and Great Lakes also has asked for sanctions and attorneys' fees. The court finds this situation arose from an unfortunate breakdown in communications, and was not the fault of the parties or their attorneys. The requests for all such relief are **denied**.

The motions to compel are **granted in part and denied in part**, consistent with this order.

**IT IS SO ORDERED.**

**DATED** this 29th day of December, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT